U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the order of the Court.**

Signed May 25, 2005                                                                                     **United States Bankruptcy Judge**

---

```
          IN THE UNITED STATES BANKRUPTCY COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                    DALLAS DIVISION
```

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BILLY THOMAS, | § | CASE NO. 03-38389-SAF-7 |
|     D E B T O R. | § | |
| | § | |
| FIDEL CEBALLOS and ELIZABETH | § | |
| ARRENDONDO, | § | |
|     PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 04-3562 |
| | § | |
| BILLY THOMAS, | § | |
|     DEFENDANT. | § | |

**MEMORANDUM OPINION AND ORDER**

Fidel Ceballos and Elizabeth Arrendondo, the plaintiffs, object to the discharge of a state court judgment in the amount of $238,191, against Billy Thomas, the debtor. The plaintiffs contend that the judgment is not dischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(4). Thomas responds that the state court erred and that the judgment should be discharged. Thomas also requests the recovery of his attorney's fees.

The determination of the dischargeability of a debt constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(I) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

Section 523(a)(2)(A) provides an exception to the discharge of a debt for money or property, to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523 (a)(2)(A). The plaintiffs base their complaint on actual fraud. To prove actual fraud, the plaintiffs must prove that (1) Thomas made representations; (2) at the time they were made Thomas knew they were false; (3) Thomas made the representations with the intention and purpose to deceive the plaintiffs; (4) that the plaintiffs relied on the representations; and (5) that the plaintiffs sustained losses as a proximate result of the representations. Recoveredge, L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995).

Section 523(a)(4) provides an exception to the discharge for fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). In construing § 523(a)(4), the Fifth Circuit stated in Texas Lottery Comm'n v. Tran (In re Tran), 151 F.3d 339 (5th Cir.1998), that

> Congress designed [this] discharge exception to reach "debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." Consistent with the principle that exceptions to discharge are to be narrowly construed, the concept of fiduciary under § 523(a)(4) is narrower than it is under the general common law. Under § 523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. Constructive trusts or trusts <u>ex malificio</u> thus also fall short of the requirements of § 523(a)(4). Statutory trusts, by contrast, can satisfy the dictates of § 523(a)(4). It is not enough, however, that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary." Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties. The question whether a state statute creates the type of fiduciary relationship required under § 523(a)(4) is one of federal law. To make this determination a federal court must nevertheless look to state law . . . to discern whether the supposed fiduciary relationship possesses the attributes required under § 523(a)(4).

<u>Id.</u> at 342-43 (citations and footnotes omitted).

The plaintiffs must establish that the debt is excepted from Thomas' discharge under § 523 by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279 (1991).

The plaintiffs primarily rely on the doctrine of collateral estoppel to establish their case against Thomas. By memorandum

opinion and order entered on February 24, 2005, the court denied the plaintiffs' motion for summary judgment based on collateral estoppel. <u>See</u> doc. no. 19, at pp. 5-9. At trial, the plaintiffs presented more of the state court record to this court for review, and again requested that the court apply collateral estoppel. The court adopts and incorporates its statement of the law in the memorandum opinion entered February 24, 2005, regarding collateral estoppel.

In addition, at trial, the plaintiffs called Thomas as an adverse witness and presented the testimony of Jim Drebelbis, a forensic engineer. The plaintiffs did not testify. Ceballos was undergoing lymphoma treatment on the date of trial. Arrendondo declined to leave Ceballos during his hospitalization. The court offered to take all testimony except the plaintiffs, and then continue the trial until one or both of the plaintiffs could testify. Counsel for the plaintiffs declined that offer. In addition, Pedro Trejo did not appear pursuant to a trial subpoena. The court offered to have the United States Marshal enforce the subpoena, but counsel for the parties agreed to submit Trejo's deposition transcript.

The plaintiffs' home had been substantially destroyed by fire on March 20, 1999.  On the day of the fire, Thomas appeared at their home to offer assistance with the homeowners' insurance claim.  Ceballos spoke no English.  Arrendondo spoke limited English.  Thomas, doing business as Neighborhood Adjusters, represented that he was an insurance consultant for residential and commercial losses, licensed by the Texas State Board of Insurance.  The plaintiffs retained Thomas "to measure and document the loss and present the insured's claim to the Insurance Company."  The plaintiffs agreed to pay Neighborhood Adjusters ten percent of the amount recovered on account of the loss.

Thomas arranged for an inspection, which reported damages of $78,238.37.  Thomas assisted the plaintiffs in presenting their claim to their insurance company, Farmers Mutual.  Farmers Mutual paid the policy limits of $39,000 for damages to the house and $19,500 for damages to the contents.  Thomas drew his ten percent fee from the recovery.

In addition, Thomas introduced the plaintiffs to Trejo, who purported to be a contractor in the house remodeling business. Trejo had known Thomas for two years.  Trejo spoke Spanish.  Even though the inspection arranged by Thomas estimated that repairs would cost $78,000, Trejo agreed to repair the house for the

$39,000 policy recovery. Thomas prepared the Trejo contract with the plaintiffs. Trejo did not complete the reconstruction.

Arrendondo testified in state court that she had been relieved to recover the policy limits. She thought the house could be repaired for the $39,000. Trejo thought he could do the repairs for the $39,000. Thomas testified before this court and in his state court deposition, that he advised the plaintiffs not to sign the Trejo contract, given the estimated $78,000 cost of repairs. Thomas testified that he suggested that the plaintiffs relocate. In her state court testimony, Arrendondo stated she did not recall statements to that effect by Thomas.

Arrendondo testified in state court that Trejo did not finish the work because he ran short of money. Trejo paid Thomas about $8,000 out of the $39,000 insurance proceeds. Arrendondo testified in state court that Trejo said he was not finishing the work because Thomas did not pay him.

In addition to his ten percent fee, Thomas took $4,000 from the insurance proceeds as a commission from Trejo for securing the contract. He also took an additional $3,000. Thomas did not disclose to the plaintiffs that he would take additional compensation from the insurance recovery. The plaintiffs did not agree to the additional compensation. The insurance company paid the $39,000 for the house damage by issuing three $13,000 checks.

At the request of the plaintiffs and Trejo, Thomas arranged to have the checks cashed. He testified that he incurred a $390 fee for each check. Thomas did not disclose that fee to the plaintiffs and they did not agree to the payment of the fee from the insurance proceeds.

The state court found several violations of the Texas Deceptive Trade Practices Act, §§ 17.46(b). Those violations do not meet the fraud elements of § 523(a)(2)(A). See Memorandum Opinion and Order entered February 24, 2005, as doc. no. 19, at 14.

The state court also found that Thomas committed actual fraud and breached his fiduciary duty to the plaintiffs. The plaintiffs contend that Thomas committed actual fraud based on misrepresentations that he would handle all matters related to the insurance claim and receive no more than ten percent of the insurance proceeds paid to the plaintiffs. The state court record supports a finding that Thomas represented that his fee would be ten percent of the insurance recovery, that he knew that statement was false, that he took $8,000 more than the ten percent recovery, that he intentionally acted, that the plaintiffs relied on their contract with Thomas regarding his fees, and that they were damaged as a result of the representation.

The court applies the collateral estoppel doctrine to those findings. Even if the court did not apply collateral estoppel to those findings, the trial before this court establishes those findings by a preponderance of the evidence. As a result, a debt of $8,000 is not discharged.

Art. 21.07-5 § 25(a) of the Texas Insurance Code provides "all funds received as claim proceeds by a licensee acting as a public insurance adjuster are received and held by the licensee in a fiduciary capacity. A licensee may not divert or appropriate fiduciary funds received or held."

Thomas held a license and acted as a public insurance adjuster. The state court found that the statute applied. Thomas received or held claim proceeds. He did so in a fiduciary capacity. He diverted $8,000 from the fiduciary funds received or held. This court applies the collateral estoppel doctrine to those findings.

Thomas argues that he completed his fiduciary function when he obtained the policy limits from the insurance company. Thomas argues that he obtained the additional sums from Trejo after the completion of his fiduciary function. Thomas misreads the statute. He received and/or held claim proceeds. Those proceeds amount to a res. The statute requires that he perform "trust-like" duties regarding those proceeds. Thomas failed to do so.

The $8,000 debt must be excluded from his discharge under § 523(a)(4).

The plaintiffs further contend that Thomas committed actual fraud based on misrepresentations that he would supervise the rebuilding of the plaintiffs' house and that the house would be restored to its pre-fire condition. The state court found that Thomas represented that he would reconstruct the plaintiffs' house to its pre-fire condition. The state court found that the ten percent fee would cover both the handling of the insurance claim and his services for the reconstruction of the house. The state court further found that the plaintiffs relied on Thomas to pay the $8,000 retained from the insurance proceeds to Trejo for the construction of the house, and that the plaintiffs were damaged by Thomas not paying that amount to Trejo. The state court found that Thomas intentionally committed the act. The state court's findings of Thomas' intent and the plaintiffs' reliance go to the $8,000. The state court did not find that Thomas intended to deceive the plaintiffs regarding the construction of the house or the cost of the repairs. The state court did not find that the plaintiffs relied on Thomas for the proposition that the house could be reconstructed for $39,000. The state court found that the plaintiffs relied on Trejo's representations and on Thomas' "previous representation," which

this court reads to apply to the $39,000 insurance proceeds recovery. The state court lumped its findings around the $8,000 matter. The state court did not issue findings addressing Thomas' causation of damages other than withholding the $8,000, as contrasted with Trejo's failure to perform under his contract. This court cannot therefore apply the collateral estoppel doctrine to the balance of the state court judgment, which goes to the construction of the house, mental anguish and attorney's fees. See Memorandum Opinion and Order entered February 24, 2005, as doc. no. 19, at pp. 8-9.

The plaintiffs have not established at this trial that Thomas represented that he would restore the house for $39,000. Trejo entered the contract with the plaintiffs. Thomas had obtained an estimate that the repairs would exceed $78,000. Thomas testified that he advised the plaintiffs not to sign the contract, but rather advised them to move. He testified that they appeared to want to deal with Trejo, who spoke Spanish. Although Arrendondo testified in state court that Thomas did not advise them not to sign the contract, the plaintiffs did not testify at the trial of this adversary proceeding. The court offered to continue the trial to obtain their testimony, but their counsel declined the invitation. The plaintiffs obtained a judgment for breach of contract against Trejo. This court must

determine the dischargeability of a debt. The plaintiffs have not established that Thomas intended to deceive the plaintiffs regarding the costs of the repairs to their house. The plaintiffs have not established that they relied on Thomas, as contrasted with Trejo, to repair the house for the $39,000 contract with Trejo. The plaintiffs have not established all the elements of actual fraud to exclude the remainder of the state court judgment from Thomas' discharge.

The plaintiffs requested that the court admit Thomas' state court deposition to establish an admission of a party opponent. They rely on <u>United States v. Ballard</u>, 779 F.2d 287, 291 (5th Cir. 1986), where the court held a trial court did not abuse its discretion in admitting a civil case deposition in a criminal trial since extra-judicial admissions, voluntarily made, are admissible in evidence. The Court considered the issue in the context of the hearsay rule. The context of the offer in this trial differed considerably. Thomas testified in this trial. The court, in the exercise of its discretion, determined that Thomas should be questioned, with the deposition used for impeachment purposes, thereby deferring but not refusing the admission.

The plaintiffs also request recovery of attorney's fees. The state court awarded attorney's fees but other than an $8,000

debt, the state court judgment is not entitled to preclusive effect. The state court did not render a finding regarding the amount of attorney's fees associated with the withholding issue. The plaintiffs did not present specific evidence of those fees to this court.

Thomas contends that the state court erred. This court does not sit as an appellate court to the state trial court. <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923). This court determines, instead, whether the collateral estoppel doctrine applies.

Thomas also contends that he should recover his attorney's fees. The plaintiffs have prevailed in this law suit by establishing that a debt of $8,000 is excepted from discharge. Thomas is not entitled to recover attorney's fees.

Based on the foregoing,

**IT IS ORDERED** that Fidel Ceballos and Elizabeth Arrendondo shall have a judgment declaring that $8,000 of the state court judgment is excepted from the discharge of Billy Thomas. The court awards pre-judgment interest from August 21, 2003, to date of entry of judgment at the applicable federal rate of 1.29 per cent. The court also awards post-judgment interest at the federal rate.

Counsel for the plaintiffs shall prepare a final judgment consistent with this order.

###END OF ORDER###